UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STACIE DELLUCKY, ET AL.                                        CIVIL ACTION

VERSUS

ST. GEORGE FIRE PROTECTION
DISTRICT, ET AL.                                        NO. 21-00287-BAJ-EWD

RULING AND ORDER

In this action, Plaintiffs Frank and Stacie Dellucky allege that they suffered discrimination at the hand of their former employer, the St. George Fire Protection District No. 2 (the "District"). Not because of their race, sex, gender, disability, or any other status traditionally associated with such disputes, but because they got married. On this basis, Plaintiffs pursue federal constitutional claims *only*, alleging that the District and its Fire Chief, Gerard Tarleton violated their rights to free association and intimacy (*i.e.*, marriage), among others.

Now the District and Chief Tarleton move for summary judgment, arguing that Frank's claims are barred by a settlement agreement that he executed when he left the District in 2017 (three years before he married Stacie), and that Stacie's claims fail as a matter of law. (Doc. 43). Plaintiffs oppose Defendants' motion. (Doc. 44).[1] For the following reasons, Defendants' motion will be granted, and this action will be dismissed with prejudice.

---

[1] In their opposition memorandum, Plaintiffs purport to "incorporate *in toto* the prior *Opposition to Motion for Summary Judgment on the Merit* [sic]." (Doc. 44 at 2). Plaintiffs' oppositions to Defendants' prior motions for summary judgment, however, were stricken from the record. (*See* Docs. 37, 40, 42). Accordingly, the Court limits its analysis to the arguments set forth in Plaintiffs' June 6, 2023 opposition brief. (Doc. 44).

## I.   BACKGROUND

### A. Summary Judgment Evidence[2]

The St. George Fire Protection District No. 2 is a political subdivision of the State of Louisiana that provides fire protection services in the southeast portion of East Baton Rouge Parish. (Doc. 43-2 ¶ 1, *hereinafter* "SOF"). Chief Tarleton manages the District's daily operations, and maintains authority to hire, discipline, and fire all District employees. (*Id.* ¶ 2).

Frank began his employment at the District in August 1999. Over the years, he was promoted through the District's civil service system until he reached the permanent classified civil service position of District Fire Chief on March 28, 2013. (SOF ¶ 6). Stacie began her employment at the District in 2014, as a part-time receptionist. In 2016, she was promoted to a full-time, non-civil service administrative assistant position. (*Id.* ¶ 5).

Frank and Stacie were not married to each other when Stacie joined the District in 2013. To the contrary, each were married to other people: Stacie was married to Chad Roberson, the District's Assistant Fire Chief, and Frank was

---

[2] The evidence set forth here is drawn from the well-supported "facts" contained in Defendants' Statement Of Undisputed Material Facts. (Doc. 43-2). Notably, Plaintiffs' admit to the vast majority of these "facts." (*See* Doc. 44-1). More important for present purposes, Plaintiffs' "denials" are either non-responsive to Defendants' proposed "facts," or not supported by competent summary judgment evidence, as required by this Court's Local Rules for summary judgment practice. (*See id.*). Accordingly, even those "facts" that Plaintiffs "deny" or deem "not relevant" are accepted as true for present purposes. *E.g., Transportation & Logistical Servs., Inc. v. H & E Equip. Servs., Inc.*, No. 21-cv-00118, 2022 WL 842858, at *1 n.1 (M.D. La. Mar. 21, 2022) (Jackson, J.) (deeming plaintiff's proposed uncontested material facts admitted under Local Rule 56(f) where defendant failed to submit an opposing statement of material facts meeting the requirements of Local Rule 56(c)).

married to Nichole Dellucky, who was never employed by the District. (SOF ¶¶ 4, 7, 9).

Beginning in 2016, when they were each married to other people, Frank and Stacie started dating each other. News of Frank's and Stacie's affair quickly spread throughout the District, in part because Stacie shared details of their liaisons with District employees—even in real time—as the drama unfolded. (SOF ¶ 15; *see id.* ¶¶ 11-19). In addition to their off-the-clock activities together, Frank and Stacie were spending considerable time with each other in the workplace, at the expense of their regular duties. (*Id.* ¶ 17). Defendants' unrebutted Statement of Material Facts describes this stage of Frank's and Stacie's romantic involvement in the following terms:

> Rumors of an affair between Stacie and Frank spread like wildfire, and polarized employees. Frank and Stacie were being ostracized by other employees because of this rumor. Frank was having difficulty making shift relief with other district chiefs, who were friendly with Chad Roberson. Stacie and Frank's relationship was creating havoc in St. George's workplace.

(*Id.* ¶ 18).

On October 21, 2016, after receiving a phone call from Nichole Dellucky claiming that she caught the couple in the midst of a tryst, Chief Tarleton held separate meetings with Frank and Stacie, explaining to them that their relationship was causing problems in the workplace. Specifically, Chief Tarleton cited the couple's on-the-job behavior, and the fact that their affair was creating an obvious conflict for Chad Roberson, who was next in line to be Fire Chief, a position in which he would supervise Frank *and* Stacie. (SOF ¶¶ 21-22). At these meetings, Chief Tarleton

3

warned Frank and Stacie that if they got "hooked up," neither could work at the District, explaining that "it just creates a nightmare." (Doc. 43-4 at 17).

It seems that, for a time, Chief Tarleton's October 2016 warning had its intended effect, and Frank's and Stacie's relationship temporarily cooled. Or, at least, there is no evidence that the couple immediately continued their affair. To the contrary, throughout 2017 and early 2018, Frank and Stacie each obtained divorces (from Nichole and Chad, respectively), and Frank made sexual advances on at least one more District co-worker, which ultimately resulted in Frank's resignation from the District in February 2018. (SOF ¶¶ 22, 23).

Specifically, Frank voluntarily resigned to avoid participating in an employee disciplinary investigation, after he sent sordid Facebook messages to the co-worker referenced above. (*Id.* ¶¶ 23-29). In conjunction with his resignation, Frank executed a Settlement Agreement with the District, "through its duly authorized Fire Chief and Appointing Authority, Gerard C. Tarleton." (Doc. 43-10). Among other things, this Settlement Agreement contained a clause releasing "all claims" among the parties, whether "known" or "unknown," stating:

> 15. The parties hereby forever release, discharge, compromise and settle all claims and causes of action against each other, whether known of [sic] unknown, and whether asserted or unasserted."

(Doc. 43-10 ¶ 15).

After his resignation, Frank took a job at the Livingston Fire Protection District No. 4, where he remains to this day. (SOF ¶ 30). Stacie, however, remained at the District.

Two years later, on June 30, 2020, Frank and Stacie got married in Florida. (SOF ¶ 31).

On July 7, 2020, when Stacie returned to work, Chief Tarleton called her to his office and fired her, citing his October 2016 warning that Stacie could not continue work for the District if she "hooked up" with Frank. (SOF ¶ 32). Stacie surreptitiously recorded this conversation on her phone, in violation of District Policy. (SOF ¶ 33; *see* Doc. 43-5 at 72). Abridged, the conversation went as follows:

> **MR. TARLETON:** Have a seat. I want to talk. You know you got married to Frank.
>
> **MS. DELLUCKY:** Yes, sir.
>
> **MR. TARLETON:** It's problematic with you working here.
>
> **MS. DELLUCKY:** Why?
>
> **MR. TARLETON:** Because there's gonna be a conflict. You, you and Chad are now divorced.
>
> **MS. DELLUCKY:** It shouldn't be.
>
> …
>
> **MR. TARLETON:** We had this conversation a few years ago when the whole thing with you and Frank popped up, and I told you then that if you and Frank get hooked up that neither one of you could work here. It just creates a nightmare. There's not another office for me to put you in. At some point in time, he's likely to be at least number two here. He'll be a leading candidate for my job.
>
> **MS. DELLUCKY:** Okay.
>
> **MR. TARLETON:** And that's a problem. And as we have expanded things, there's a -- there's less and less for you to do. So, what I'm telling you is what I told you a few years ago, if this happens then you can't work here. I see it as nothing but a, a problem for us.
>
> …

**MR. TARLETON:** So, I'm just following through on the discussion we had in the past. This is a problem for me. It's a problem for this place.

**MS. DELLUCKY:** I mean, as far as other than that, has my work been—

**MR. TARLETON:** I don't have an issue with your work. I have an issue with the situation that's being created. You and Frank had your fling and then you end up splitting with Chad and divorcing, and then, then you married Frank. And good, I hope y'all the happiest two people in the world. I get it, people get divorced, but they don't work in the same building, in the same facility. And that's where the conflict for me is gonna be. It only takes one time and then what do I do?

**MS. DELLUCKY:** I mean, our divorce has been final for two years and we haven't had any issues.

**MR. TARLETON:** I see this as being a big issue for me, so... When all this came about, I probably should have said everybody just needs to go away, and it didn't happen that way. And I've been patient and sitting on it. But when you got married to Frank, it changed the whole deal. I can't see how this can ever work out here. And if he ever sits in this chair, it's even worse. So, here's what I intend to do is, is we'll leave you on administrative leave until August the 10th. So, you'll get paid through August the 16th. And at that time we'll pay you whatever accrued leave you have on the books, whatever that number is. Don't even know what it is.

**MS. DELLUCKY:** Okay.

(Doc. 44-6 at 2-7).

After her termination, Stacie worked briefly at the Livingston Fire Protection District No. 4 (with Frank). She now works at a law firm in Baton Rouge. (SOF ¶ 36).

### B. Procedural History

Plaintiffs initiated this action on May 17, 2021. (Doc. 1). Plaintiffs' operative Amended Complaint pursues federal constitutional claims only, alleging that Defendants' actions violated their "rights under the First Amendment, Due Process

Clause, Equal Protection Clause, and Article VI, § 3 of the U.S. Constitution." (Doc. 2 ¶¶ 21, 24).[3]

Now, Defendants move for summary judgment, arguing principally that Frank's claims are barred by the Settlement Agreement, and that Stacie's lack any evidentiary support. (Docs. 43, 43-1).[4] Plaintiffs oppose Defendants' motion in part, defending their First Amendment, Due Process, and Equal Protection claims, but failing to offer any argument or support for their "Article VI, § 3" claim. (Doc. 44).

## II. LAW AND ANALYSIS

### A. Standard

The summary judgment standard is well-set: to prevail, Defendants must show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making this assessment, the Court must view all evidence and make all reasonable inferences in the light most favorable to Plaintiffs—the non-moving parties. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022). Even so, under the Federal *and* Local Civil Rules, Plaintiffs *must* counter with *evidence* to support their claims: "A non-movant will not

---

[3] In their opposition to Defendants' motion, Plaintiffs attempt to bootstrap state law claims onto their federal claims, insisting that because the Amended Complaint demanded various "compensatory damages," "damages for Louisiana State law violations" are somehow incorporated into this demand. (Doc. 44 at 5). This is not how it works. Federal courts adhere to the notice pleading standard, which requires *at least* that "defendants in all lawsuits must be given notice of the specific claims against them." *Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). Plaintiffs' Amended Complaint provided no notice whatsoever that they were pursuing state law claims, and the Court will not entertain any such claims at this late stage.

[4] Alternatively, Defendants argue that Frank's claims are time-barred. The Court does not reach this argument because, for reasons explained below, Frank's claims are plainly barred by the Settlement Agreement.

avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quotation marks omitted); *see also* M.D. La. LR 56. To the point, summary judgment is *required* if Plaintiffs fail to "produce any summary judgment evidence on an essential element of [their] claim." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### B. Analysis

### i.    Frank's claims are barred by the Settlement Agreement

The Settlement Agreement is governed by Louisiana law, (Doc. 43-10 ¶ 16), which requires the Court to enforce its "clear and unambiguous" terms. *See Pellerin Const., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 578 (E.D. La. 2001) (Vance, J.) (discussing authorities). Under the Settlement Agreement, Frank clearly and unambiguously released "all claims and causes of action" related to his employment at the District, "whether known of [sic] unknown, and whether asserted or unasserted." (Doc. 43-10 ¶ 15). Plainly, this release was broad enough to encompass the constitutional claims Frank pursues here. *See Am.'s Favorite Chicken Co. v. Suryoutomo*, 889 F. Supp. 916, 918 (E.D. La. 1995) (Jones, J.) ("Unambiguous releases of past, present or future known or unknown claims bar those claims." (citing *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1310-13 (5th Cir. 1983)). Frank's claims will be dismissed with prejudice.[5]

---

[5] Even if Frank's claims were not barred, they would nonetheless fail because it is now clear that they are merely derivative of Stacie's claims, (*see* Doc. 44 at 5), which, for reasons set forth below, lack evidentiary support.

### ii. Stacie's claims fail on the merits

First, Stacie does not address—and therefore abandons—her claim under "Article VI, § 3" of the Constitution. In any event, there is no evidentiary support whatsoever that Defendants' actions ran afoul of the Constitution's prohibition against demanding a "religious Test … as a Qualification to any Office or public Trust under the United States." *See* U.S. Const. art. VI, cl. 3.

Stacie's claim that Defendants violated her First Amendment "constitutional protection of freedom of association and marriage" by terminating her after she married Frank fares no better. (*See* Doc. 44 at 6). Most recently, the U.S. Court of Appeals for the Fifth Circuit provided the following guidance for analyzing such claims:

> The right to marry is both a fundamental substantive due process and associational right. In determining the level of scrutiny applicable to governmental action alleged to infringe upon the right of marriage, we employ a two-step analysis: first, a court must ask whether the policy or action is a direct or substantial interference with the right of marriage; second, if the policy or action is a direct and substantial interference with the right of marriage, apply strict scrutiny, otherwise apply rational basis scrutiny.

*Lewis v. Smith*, 2022 WL 10965839, at *3 (5th Cir. Oct. 19, 2022) (quotation marks and citations omitted). A policy or action is a direct or substantial interference with the right of marriage—demanding strict scrutiny review—if it "completely prohibit[s] one class of people from being with another." *Id.* (quotation marks omitted). By contrast, a policy or action "only incidentally affects the right [of marriage]"— demanding rational basis review—if "it requires employees who violate the policy to relinquish their jobs but does not prohibit the relationship itself." *Id.*

9

Here, no evidence suggests that Defendants' "policy" against Stacie marrying Frank was aimed to prohibit "one class of people from being with another." To the contrary, Defendants only prohibited Stacie from marrying Frank to avoid chain-of-command and workplace morale issues that would arise from Stacie being managed by Chad Roberson, the District's Assistant Fire Chief, and Stacie's ex-husband. Stacie disregarded this prohibition, married Frank, and lost her job. But this was merely an "incidental" consequence because Defendants' actions did "not prohibit the relationship itself." *Lewis*, 2022 WL 10965839, at *3.

Thus, "rational basis scrutiny" applies to Stacie's claim. *Lewis*, 2022 WL 10965839, at *3. And plainly, under "the deferential rational basis test," the evidence shows that a rational relationship existed between Defendants' policy of requiring Stacie to choose between marrying Frank and keeping her job, "and a conceivable legitimate objective"—specifically, maintaining chain-of-command and workplace morale—particularly given the chaos that Stacie and Frank created at the District when they first dated in 2016. *See id.* Stacie's freedom of marriage and association claim fails and must be dismissed. *E.g.*, *id.* (St. Tammany Parish Sheriff's Office Deputy failed to state a freedom of association claim after being fired for violating Sheriff's Department policy prohibiting relationships with convicted felons because the policy served "legitimate interests in preventing … officers from placing themselves in compromising positions and in preserving the STPSO's reputation in the public").

Stacie's due process claim is equally spurious. As an initial matter, it is not clear what protected "interest" Stacie claims was taken from her. (*See* Doc. 44 at 11-12). If, as Stacie suggests, it was her "protected liberty interest in marriage," then that claim fails because Defendants' did *not* deprive Stacie of her marriage to Frank—indeed, the couple remain married to this day. (SOF ¶ 38). Rather, Defendants merely deprived Stacie of her job. But any due process claim related to Stacie's continuing employment necessarily fails because she was a non-civil service employee, (SOF ¶ 5). and has failed to produce any evidence whatsoever that she enjoyed an expectation of ongoing employment by operation of contract, state law, or *de facto* policy. *See Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997) ("[I]n order to advance a due process claim in connection with his termination, [a government employee] must point to some state or local law, contract or understanding that creates a property interest in his continued employment."). "Absent a property interest, there is nothing subject to due process protections and our inquiry ends." *Id.*

Stacie also cannot prevail in her equal protection claim because she is not a member of a suspect or protected class, and a "class of one" claim related to any unequal treatment she experienced as a result of marrying Frank "is unavailable in a public employment context." *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (quotation marks omitted).

Finally, to cover their bases, Defendants seek dismissal of Stacie's First Amendment free exercise claim. (Doc. 43-1 at 21-22). To the extent the Amended Complaint even alleges such a claim, Stacie has produced no evidence to support a

11

finding that she maintains sincerely held religious beliefs, or that Defendants' actions substantially burdened any such beliefs. *See A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 701 F. Supp. 2d 863, 876 (S.D. Tex. 2009) (Ellison, J.) ("After demonstrating that he possesses a sincerely held religious belief, a plaintiff must prove that a government regulation substantially burdens that belief." (quotation marks omitted)), *aff'd*, 611 F.3d 248 (5th Cir. 2010).

In sum, Stacie has failed to come forward with summary judgment evidence supporting multiple essential elements of her claims, thus requiring dismissal. *Geiserman*, 893 F.2d at 793.

## III.   CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion For Summary Judgment (Doc. 43)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that this action be and is hereby **DISMISSED WITH PREJUDICE**.

Judgment shall be entered separately.

Baton Rouge, Louisiana, this 19th day of October, 2023

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**